PjeaRsost, J.
 

 It is well settled, that a Court of Equity will protect the interest of one entitled to a i; limitation over” in slaves, after the termination of a life-estate.
 

 If the party is vigilant, and makes application before the slaves are carried out of the State, the relief is plain; i. e., a bond for the forthcoming of the slaves at the termination of the life-estate, which is enforced, if necessary, by a writ of sequestration. When the application is not made until after the slaves are removed, the extent of the relief that will be
 
 *340
 
 given is not settled. In
 
 Cheshire
 
 v. Cheshire, 2 Ire. Eq. 573, the slaves having been run out of the State and
 
 sold
 
 before the bill was filed, the Court say, “ the defendants are unable to get back the slaves, either at Law or in Equity, from the presejit holder ; therefore the plaintiff cannot get relief on the particular prayer in his bill, (a bond for the forthcoming of the slaves at the death of the tenant for life); but he now elects to take the purchase-money received by the defendant, and claims this under the prayer for general relief; and we are of opinion that he is entitled to it, with interest, from the death of the tenant for life.” She died pending'the suit. So, according to this case, when the entire estate in the slaves has been sold, the relief is a decree for the purchase-money,
 
 minus
 
 the interest during the life of the tenant for life, the bill being filed
 
 soon after
 
 the. slaves were taken off and sold. In
 
 Lewis
 
 v.
 
 Kemp,
 
 3 Ire. Eq. 233, the bill was not filed until after the death of the tenant for life ; some of the slaves were on hand at his death, but he had sold the others, and they had been taken out of the State many years before, and had not been heard of for more than seven years. In regard to the former, the decree is, that they, together with, their increase, be delivered over by the executor of the tenant for life, to the remainder-man, with an account of the hires. In regard to the latter, the Court, assuming that they had been removed out of the State by the tenant for life, with an intent to defraud the remainder-man, declare that the plaintiff is entitled to relief, but not to, the particular relief he seeks, (i;. e., the value of the negroes sold, together with their increase since, and an account of hires sin.ee the death of the. tenant for life) and the Court say, “ upon the death of the tenant for life, his estate is answerable to him in remainder for-the value- of the-chattel sold, to be estimated at the time oLtke gale, together with interest from the death of the tenant for life. If, however, the chattel sold, (a negro for instance,) has died during the life of the tenant for life, we hold that the remainder-man has no claim for its value upon the estate of the tenant for life; so, if the chattel has become deteriorated before the life-
 
 *341
 
 estate falls in, he is only entitled to that which remains, and the value would be estimated at the time of the death of the tenant for life, with interest from that time.” It was, therefore, referred to the master to report the sums for which the defendant, as executor, is answerable, upon the principles declared. Before the master, the defendant showed that he had no assets, except to some small amount, and the case passed off without any definite action, being remanded to the Court below, -where it was probably compromised. It had been previously held in an action at law, for one of these same negroes, “ that if the negro had died in, the life-time of the tenant for life, the remainder never took effectthat, rvhether the negro had died before the tenant for life, was a question of fact for the jury; that, when a person is proved to have been alive, the presumption is that he continues to live, until the contrary appears ; but this presumption ceases if he is not seen or heard of in seven years; and the presumption that he is dead gets stronger and stronger, the longer it is after this that he is not heard of,” This was the ruling in the Court below, which, upon an appeal, was approved of by this Court,
 
 Lewis
 
 v. Mobley, 4 Dev. and Bat. 323. So, according to. this case, if the slave dies during- the continuance of the life-estate, the remainder-man is not entitled to a decree for his value at the time he was sold, and taken out of the State, nor to the purchase-money, minus the interest during the life of the tenant for life.
 

 In
 
 Lee
 
 v. McBride, 6 Ire. Eq. 533, it was declared in the Court below that the purchaser of a particular estate in a slave, who, in fraud of the remainder-man, carried the slave out of the State and sold him, was liable to the remainder-man for the purchase-money, with interest. On an appeal the decree was reversed, upon the ground that there was no sufficient proof to sustain the allegation of fraud, and the bill was dismissed. In delivering the opinion, the extent of the relief to which the plaintiff would be entitled — assuming the slave to have been sold and carried out of the State with an intent to defraud the remainder-man — is discussed. It is there
 
 *342
 
 said, “the remainder-man. is not entitled to the purchase-money, with interest from the hill filed,
 
 without regard to the value of the fcvrtieular
 
 estate,
 
 or that in
 
 remaind&r, either at the day of sale, or of the decree pronounced; ” for, that would amount to a forfeiture of the particular estate; and after some remarks in reference to the difficulty of laying down a rule as to the extent of the relief to which the remainder-man is entitled, the question is left open.
 

 After an examination of the cases, and a full consideration of the principles involved, we are satisfied, that when a slave is sold with an intent to defraud the remainder-man, although the slave dies during the life of the tenant for life, still the remainder-man may elect to ratify the sale, and is entitled to a decree for such part of the purchase-money, with interest thereon from the day of sale, as will hear to the whole sum the proportion of the value of his estate to the value of the whole. In other words, the purchase-money should be divided between the owner of the particular estate and the remainder-man, in proportion to the relative value of their respective interests. Upon the same principle, that a tenant in common, when the property is sold out and out by his co-tenant, may either follow the property, or may elect to have his share of the purchase-money, or when the property is destroyed, or taken to “parts unknown,” may claim his share of its value. It is certain the owner of the particular estate cannot object to this rule; the objection to it is, that it is too favorable to him, as, to some extent, he is allowed to take advantage of his own wrong, and to force the remainder-man to consent to the sale. On the other hand, this Court cannot punish the particular tenant by declaring his estate to be forfeited; and the remainder-man is'at liberty, if the property is still in esse, to follow it, or, if he is not able to do so, ho is entitled to the purchase-money, if it has been sold, or to its value, if it was run out of the State,
 
 mmus
 
 the interest during the life-estate. If the property die during the life-estate— had there been no wrong attempted — the remainder-man, would, of course, get nothing; and, under the circumstances,
 
 *343
 
 a proper compensation for the fraud attempted on tbe part of the particular tenant, is to require him to pay the relative value of the remainder, as compared with the value of the particular estate at the time of the conversion.
 

 In all the cases to which we have referred, the limitation over was after a life-estate. In our case the entire estate is given to the first taker, determinable upon a contingency, and the limitation over to the plaintiff depends upon the happening of that contingency, and also, upon the fact of the plaintiff ’s being the survivor 5 so, that the executory bequest, under which he is entitled, was uncertain as to the event, and also uncertain as to the person.
 

 We have no doubt that the principle upon which relief is given applies to our case ; but the uncertainty of the plaintiff’s intent at the time of the wrong committed, necessarily affects the mode of obtaining relief, and, to some degree, its extent.
 

 We are satisfied from the proofs that, the testator of the defendant, after he had purchased the interest of John W. Eoberts, (who, by his intermarriage with Mary S. B. Haugh-ton, had become entitled to the entire estate in the slaves now in controversy, subject to be determined upon her death without issue then living,) sold the slaves to a negro-trader, with the expectation that he would immediately carry them out of this State, thereby intending to defeat any interest that might afterwards accrue to the plaintiff, or any of the other legatees under the will of Jonathan Ilaughton. But it was the misfortune of the plaintiff that his interest had not then accrued, and now it is his misfortune not to have offered any proof to repel the presumption of the death of the several slaves, arising from the fact that they have not been seen or heard of for more than seven years; he must, therefore, be content, under the rule above announced by ,us, to take a decree for the value of his interest, as compared with that of the defendant’s testator at the time of the sale, as to which there will be a reference, and in regard to which, according to the proofs, there can be no difficulty ; because the evidence shows the price given by the
 
 *344
 
 defendant’s testator for the interest of John "V. Eoberts, and also, the price he obtained when lie shortly ¡[afterwards sold the slaves out and out. If it is said that this is allowing the defendant to take advantage of his own )vrong, the reply is, suppose the defendant had killed the slave, the plaintiff could only recover the comparative value at the time the act was committed, and yet, that would be a greater wrong than sending him out of the State. If a female slave be given to A for life, remainder to B, and a third person kill the slave, surely B could not expect to recover what would be supposed to have been her value and that of the children she might have had, at the time the life-estate falls in.
 

 The point made by the defendant’s counsel, upon the question of estoppel, is not supported by the cases cited.
 
 Armfield
 
 v. Moore, Bus. 157;
 
 Fanshaw
 
 v. Fanshaw, Ibid. 166.
 

 The petition for partition was filed to carry out the diree~ tions of the testator, and the petitioners set out their title to the entire estate, under the provision of the will'. It was not necessary for them to set forth the fact that their estates were determinable upon certain contingencies, for the will directed that there should be a partition. It is a wrell settled rule upon the subject of estoppels that, “ if any estate passes”' there can be no estoppel upon this ground, that, a deed cannot operate as a conveyance, and also, as an estoppel. Here, the entire estate passed, determinable upon a contingency; so the doctrine of estoppel has no application.
 

 Per Curiam. The plaintiff is entitled to the value of his interest in the slaves at the time of the sale by the defendant’s testator, with interest from that time; and there must be a reference, unless the parties agree as to the amount.